JONES, JUDGE:
The petition in this case which was filed before the Attorney General of West Virginia on February 6, 1967 and transferred to this Court after its creation on July 1, 1967, alleges that on or about October 16, 1963 (shown by the evidence to be an erroneous date), the claimant, Nancy Ann Pettinger, then an infant nineteen years of age, and a student at West Virginia State College, while participating as a member of a regularly constituted swimming class taught and supervised by the respondent, slipped, was tripped or pushed so as to fall on or about the pool area located in the premises of said College, striking the rear portion of her head with great force, and that as the result of negligence of the respondent “in designing, maintaining or supervising the pool”, the claimant suffered a severe head injury, developed traumatic epilepsy and was totally disabled and damaged in the amount of $500,000.00.
The testimony of the claimant and her witnesses was taken by deposition in the State of New Jersey on November 6, 1968; and the respondent’s witnesses were heard by the Court on November 3, 1969.
There was no witness to the alleged fall and injury except the claimant herself, and while her recollection appears to be clear as to her fall and circumstances immediately connected therewith, her account of conditions before and after her injury leave much to conjecture. Some things are acceptably certain: Claimant enrolled at West Virginia State College prior to the *135 beginning of classes on September 12, 1963, and moved into a college dormitory; soon thereafter she became ill, as evidenced by unnaturally long periods of deep sleep; she was treated as an outpatient at the College infirmary on September 25, 1963, again on October 3, 1963 and on October 6, 1963; she was admitted to St. Francis Hospital on September 16, 1963, discharged October twenty-fourth, 1963, and on the same day she was admitted at Charleston Memorial Hospital, from which she was discharged on November 1, 1963 and returned to her home in New Jersey with her mother; thereafter she was under the care of several neurosurgeons and psychiatrists and was a patient in sundry hospitals; according to medical evidence she suffered from traumatic epilepsy caused by sub-dural hemorrhage of the brain; she and her mother incurred doctor bills of $319.00 and hospital bills in the amount of $5,275.47; and there is no question as to the seriousness of her condition and disability, although happily she has recovered and at the time of the taking of her deposition, she had been accepted for service in the United States Air Force.
The claimant testified substantially as follows: She was enrolled in a swimming class which she had attended four or five times; the instructor blew a whistle for the end of a class; she and a friend, Donna Bradshaw, stayed for a “couple more swims”; the pool area was dry when the class started but was wet and slippery when the class ended; she got out of the pool and “Then she (Donna) was up, going up the steps then. I was trying ito hurry to get to her and when I came around here, I started to run, but I didn’t run too far. I remember my feet went out from underneath me”; she struck her head and she remembers nothing from that time until she was talking with Dr. Nelson at the College infirmary, apparently several days after the fall.
A nurse employed at the College infirmary testified that the claimant was treated at the infirmary three times but made no mention of a fall until the third visit. The dormitory housemother testified that the claimant seemed to have hallucinations, told fantastic stories and referred to long sleeping spells before she came to school. However, on cross-examination the housemother said that she had not observed the unusual behavior for approximately two weeks after school started.
*136 A physical education instructor at the College testified that all swimming classes were instructed with regard to established rules and regulations governing the pool area, and printed rules were posted at the pool at the time of this occurrence, one of which was that no one was allowed in the pool unless an instructor or lifeguard was present.
Negligent acts charged by the claimant involve the slippery condition of the pool area, and the failure of the respondent to properly supervise the claimant after the swimming class had ended.
With regard to the slippery surface contention, there was no showing of any unusual condition or the violation of any duty to provide mats or other covering at the place where the claimant fell. Applicable to this situation is a statement in 48ALR 2d 166: “Recognizing that the walks around and near swimming pools are usually unavoidably wet and slippery, the Courts have generally exonerated the owners or operators of swimming pools from liability from injuries to patrons resulting from slipping and falling on such walks”.
While the owner or operator of a swimming pool is under a duty to provide general supervision of the activities of the pool, he is not an insurer of the safety of his patrons, and a patron must exercise ordinary care for his own safety. “Furthermore, it has been stated or recognized that if the injured or deceased patron knew of the particular danger, or if he would have known of the danger by the exercise of ordinary care, but nevertheless placed himself in peril, or failed to use ordinary care to avoid the danger, and thereby caused, or contributed to, his injury or death, he was guilty of contributory negligence precluding recovery against the owner or operator of the bathing resort or swimming pool.” 48ALR 2d 117.
The claimant, at the time of the alleged occurrence, was nineteen years of age and knew how to swim and dive. She was an intelligent college girl, capable of understanding the rules applicable to the use of the pool. She emerged from the pool without injury. She had observed, and therefore knew, that the pool deck was wet and slippery at the conclusion of the swimming class. Despite such knowledge, and in violation of the posted rules, she chose to run on the slippery surface. *137 Such conduct does not indicate reasonable care for her own safety, and, therefore we find that the claimant was guilty of contributory negligence as a matter of law.
It is doubtful that the evidence in this case was sufficient to show any negligence on the part of the respondent. However, the Court is of opinion that this question need not be decided because of our determination that the claimant was guilty of negligence proximately contributing to her injury.
Accordingly, this claim is disallowed.